Good morning, Your Honor. May it please the court. Good morning. The primacy of the First Amendment as an area of particular federal concern creates a presumption of federal jurisdiction both with regard to ripeness and with regard to abstention. I'd like to first address the ripeness issue since that was most recently briefed by letter brief as requested by this court and the ripeness issue revolves around how we understand what occurred in the state court parallel proceeding below or at least parallel to this case where a state court injunction is currently pending on appeal before the Montana Supreme Court. Before you get to that point, was it ripe when it was filed? Yes, Your Honor. There was no question regarding ripeness at the time of filing. The state court proceed, the state court complaint and the federal court complaint were roughly filed around the same time. I believe the state court complaint was filed about... I'm not talking about the Jurisdiction Council. What was the factual status? Had Armstrong's requested this tax treatment and been denied or where were they? So they at the at the time that the district court abstained if I'm understanding you're correct. I'm as if you could as of the date of filing. Yes, so the the rule had come into effect at that time. There was there was no other court proceeding that had enjoined or prevented that rule from being administered by the Department of Revenue. Had the Armstrong's been denied the request or they had they made the request for this tax treatment? No, Your Honor. They had not yet done so. So they basically are relying on... I don't mean to interrupt you, but I also don't want to slow you down. And I think your answer is that I should understand that as of the time they filed they they're relying for ripeness purposes on their intent to take advantage of this provision. That's correct, Your Honor. And both Supreme Court and Ninth Circuit precedent is clear that you don't have to go through the futile process of seeking something you can't receive in order to establish justiciability. And that's... That's what you're relying on for the time of filing and then the state injunction. Correct, Your Honor. Okay. So so then subsequently the preliminary injunction was issued by the state court proceeding. And kind of the oddity of our of our timing at this stage is that all of the prior briefing before this court occurred while there was the preliminary injunction in place and then subsequently after all of that briefing occurred, a state court injunction issued. And we would argue that because that's still pending appeal, it should be treated just like the preliminary injunction would be, which is that this is pending future state court action still. And that while we... while that is pending appeal, there is ongoing First Amendment injury in the sense that the delay here and the existence of a law that may... a rule that may be upheld by the Montana Supreme Court chills the exercise... the free exercise rights of students and families and of religious schools who want to take advantage of the tax credit program. Because they may make a decision to put their child in a different school because they don't want to interrupt and have to move a child to a midstream. Is that... that's it? That's correct, Your Honor. There's still an uncertain status with regard to state law that will influence those decisions. And it also puts the member schools of ACSI and plaintiffs in this action as well at a competitive disadvantage with secular schools because they can't offer with as much certainty that that financial assistance is going to be available. And so even with that state court injunction in place, we have an injury that that allows us to move forward with federal jurisdiction on ripeness grounds. There's only one situation that we have found where a case that is ripe at the time of filing becomes unripe. And that seems to be where the government has voluntarily abandoned the challenged action. And that essentially unripened the claim as strange as that phraseology is. But that's not the situation here where the Department of Revenue clearly is seeking to enforce its rule and is... and... and will do do so if the Montana Supreme Court vacates a state court judgment. Counsel, does entry of the state court injunction render this case moot? I don't think so, Your Honor, because under mootness, we would look at, I think, essentially the flip side of that unripeness coin, which would be the exception for mootness, which is capable of repetition. So it's evading review, but it's capable of repetition... but the injury is capable of repetition in the sense that it's very plausible the Montana Supreme Court may well reverse the state court. But also because, as... as I was discussing a moment before, there is ongoing injury where there's a chilling effect created by... by the law, even while it's not yet in effect. And the Supreme Court has held that laws that are not currently in effect can impose a chilling effect. For example, in Virginia versus American Booksellers Association, where there was a... before the law even came into effect, and the court said that that was... that was still a proper claim to raise. So I don't think under either mootness or ripeness that it would be improper for this court to exercise jurisdiction. The result you want here, you agree, would reduce Montana's tax revenues? No, I don't think so, Your Honor, at least not... Your client wants to avoid a tax. They want... they want... they don't want to pay this money. They want this credit. It would reduce revenues. Certainly, the... Our clients are seeking to take advantage of the private scholarship donations that would be provided by other individuals who would take advantage of the tax credit. Your clients want to get a tax credit from the state, from the Revenue Department, they're the defendants in the case, to get... to reduce the flow of taxes to the Department of Revenue of Montana. It may indirectly cause a reduction of revenue, but this... this Supreme Court's been very clear with respect to the Tax Injunction Act under Hibbs v. Wynn, which is essentially exactly... But Hibbs was exactly the opposite. It was exactly the opposite, right? Because under that statute, if those plaintiffs had prevailed, and this is, I think, my colleague's point, if those plaintiffs had prevailed, then... then Arizona's revenue would have been increased, maybe indirectly, maybe only by a little bit, you know, as you indicate, but... but isn't this case positioned precisely in a... in a 180-degree turn? I don't think so, Your Honor, because there's nothing in the record that indicates that there... that individuals will be dissuaded from... from... from taking advantage of the tax credit. Okay, well, first of all, her question really... so can we take it one step at a time? Yes, Your Honor. Because the question is, in... in... in this case, if they... the Armstrongs prevail, then the state's revenue is diminished, isn't that right? There's nothing in the record that indicates... Well, isn't that the practical result? They want a tax credit. What... what our client... what... what all the plaintiffs in this action are seeking is to... is to allow students to take advantage of the tax credit to go to a religious school, but there's nothing in the record that indicates that there are going to be fewer individuals taking advantage of the tax credit, or that there's going to be fewer tax... a lower amount of tax credit scholarship money. So there's... there will still be secular schools receiving money as a result of the tax credit. I... I... you're... you're way up here at, like, 30,000 feet. The practical effect that your clients want is that they can make this donation and get a tax credit and therefore pay less taxes. They may... the reasons they're doing it for... to support religious schools, all very nice, but... but that is the practical, step-by-step effect of what you want to have happen. The Revenue Department has said that they're not eligible for this tax credit, and they're saying, yes, we should be, and we want the tax credit, and we therefore want this money that would otherwise be with the Department of Revenue. Right. In that... in that sense, I suppose, Your Honor, this case is similar to a 2015 case decided by the U.S. Supreme Court, where I believe it was Colorado wanted to shore up the... the... the tax revenue that it was attempting to receive through online sales by requiring online retailers to provide notice to purchasers that they... that they... that they were responsible for the tax liability in online sales. And it's clear that there was a lot of shirking of that tax liability, and it was also very clear on the record that requiring those retailers to provide notice would... would assist the state of Colorado in obtaining tax revenue. And the Supreme Court said, even though it's clear that this will indirectly impact the state's ability to collect tax revenue, challenging that notice requirement, because it's only indirect, it doesn't directly enjoin the collection of state tax revenue. What... what is that case, please? I'm sorry, Your Honor, I should have written it down. It's in the letter briefing, so let me just briefly... Oh, if it's in the letter briefing, I've got it. That's... that's fine. I just want to be clear. We don't doubt for a minute the sincerity that Armstrong's views here. And... and... but the question is forum, and there's this Tax Injunction Act, and we've been counseled... we have a clear direction that we shouldn't doubt for a minute the state's ability to go forward... the state's court's ability to go forward and... and... and resolve this issue. And my understanding is this very claim is being... it's... it's sitting right now with the Montana Supreme Court. Yes? That is correct, Your Honor. So, with regard to the tax... And... and further, if I... if I... if I disagree with you, and I... I... I'm having a hard time distinguishing this from Hibbs, because in Hibbs, you know, we're looking at this very same tax deduction situation, and as I said, I've described it as the... as the 180, where it seems to me that what the Supreme Court said in that case is, well, Arizona's revenues would actually be increased, and as I understand it, if the Armstrongs prevailed here, the state's revenue would be... would be... would be decreased. So I'm... I'm having a hard time with your argument that Hibbs doesn't really signal pretty strongly that we should not be asserting jurisdiction here. Do you want to give this one more shot and tell me why I shouldn't rely on Hibbs? Yes, Your Honor, because of that... the Colorado case we cited, which I'm happy to look through the audit briefing if you want to see it. Okay. So... so it goes to... that... that's very helpful to me. That case is why you're telling me that you think that it's... that the... the connection to the tax revenue state... the flow of state tax revenue is just one not too indirect. That's... You're relying on that? That's correct, Your Honor. That's helpful. And that case was very clear that... All right. And it was very clear on the record there that it would harm Colorado's ability to... to collect state taxes, but because it wasn't directly enjoining the collection of that state revenue... Thank you. ...the Tax Injunction Act was not implicated. And... and... and Montana has... has itself stated in its letter briefing that it doesn't think that there's a Tax Injunction Act issue here, and I think that's... They're relying on a different reason, though. But... but I'll... I'll... I grant you that they get to the same place, but for a different reason. So your response is helpful to me. Thank you. Thank you, Your Honor. So to just briefly address the Pullman abstention issue on which the district court itself relied, the... this circuit has consistently stated that with regard to the First Amendment, there's an even stronger presumption against abstention, stronger even than the general unflagging obligation of federal courts to exercise their jurisdiction. And so already we are in a realm of essentially two layers of presumption against abstention in this case. Well, on that point, though, the... the... the presumption you're talking about is typically speech. Yes, that's correct, Your Honor. Although the... all of the cases that have addressed that have spoken of the First Amendment at large, and in Capital Square Review Board versus Pinett, the Supreme Court essentially said, we're going to look at free exercise, establishment, and... and speech on par with each other. And certainly plaintiffs have brought chilling effect claims under the free exercise claim in the... under the free exercise clause in this circuit, and that has been accepted as valid injury. And the reason why abstention is disfavored is because of the chilling effect that is caused by continued delay. It essentially perpetuates the constitutional injury being alleged by plaintiffs, and that's why Pullman abstention is... is inappropriate in First Amendment cases. If the court had... district court had subject matter jurisdiction, so if there wasn't a tax injunction act problem, and the court decided that there's good reason to abstain, should the case have been dismissed? No, and that's what... that's probably what the... the clearest error that exists here is that under Almodovar versus Reiner, under Cedars-Shake and Shingle Bureau versus City of Los Angeles, the NYSERC has been very clear that when Pullman abstention occurs, the case should be held in abeyance. To just wait for the Montana Supreme Court. That's correct, and especially here because we've already engaged in all the briefing for preliminary injunction, and... and a lot of briefing below in the... in the district court, I think it would create greater judicial inefficiency to dismiss and require us to do all of that briefing over again, rather than to just hold the case in abeyance. And if the Montana Supreme Court ultimately holds the state court, we would voluntarily dismiss. And so in any case, that would be... that would be the most appropriate remedy, assuming the abstention was proper here. I'll... I'll reserve the remainder. All right, thank you, counsel. We'll hear from the government.  Good morning. May it please the court. My name is Dan White, W-H-Y-T-E. I'm Chief Legal Counsel for the Montana Department of Revenue and here on behalf of the state. I bet you've been spelling your name your whole life. My entire life. So people don't... okay, I got it. And generally speaking, the first time I spell it, they still spell it with an I. Keep trying, keep trying. Nonetheless, thank you. You raised some interesting questions this morning. First of all, as we said in our letter briefing, this case is not ripe. There was some question at the time that Judge Christin asked about, was it ripe at the time that the federal action was filed? That may have been the case over the course of time because the state court proceedings have occurred so quickly. We're now before the Montana Supreme Court. We have oral arguments scheduled for one month from today. All of the issues that are raised here for the federal claims, the equal protection, the freedom of expression and establishment are all briefed in those briefs also. And you're interpreting... No, please. And the court is interpreting Montana law. And that is probably the most important point, Judge Rawlinson, that the Montana case proceedings also include very sensitive questions of what unique Montana law says. Article 10, Section 6. But counsel, you're losing me because you started with ripeness and now it sounds like you're pro-abstention. So what's your theory? I will back up. First of all, the court can decide on the ripeness issue. Can it? It is can. Well, that's what your letter brief said. You are able to because... So do you think it was ripe the day it was filed? The day that it was filed, it may have been ripe because the... So are you relying on... Again, to your time. Are you relying on the injunction? Do you think it was ripe and then got unripe? Let me put it this way. Actually, I'll take a step back. It wasn't ripe at the time, and here's why. Because the state case proceeding was filed before the administrative rule that prohibits religious schools from getting these scholarships ever went into place. The federal case was filed shortly thereafter. The plaintiffs in Armstrong have not filed for a tax credit, and they have not... Our records show that they haven't made a donation. One other item, if I may, Your Honor, and also that, I apologize, but also that they haven't requested a scholarship at this point. Right. He gave you that. He conceded all that point, I think, very candidly, and I appreciate his candor, but my question is do you have a response to his authorities? What he said is he thinks that the law is on his side, that they don't have to go through those formalities. It's sufficient for them to assert that they intend to. No, I don't with me today have any response to that. Okay, but that's your legal position on ripeness. Yes. The legal position on ripeness is that it's before the Montana Supreme Court, they haven't applied for any tax credits, and that it's in the court's hands and can be decided. So they aren't, if I may, they aren't out anything. They have never been denied a tax credit. They've never been denied the opportunity for a tax credit because the rule has never gone into place. There's not one pending. There isn't one pending, so it's not ripe. Okay, counsel, so then you tried to pivot to Pullman abstention, but the court can't enter a Pullman abstention order if it doesn't have jurisdiction. Do you want to talk about the tax? It just helps me to take this one step at a time. So could you talk about the tax injunction? Well, under the circumstances of this case, we didn't think that it specifically applied. Now, I don't have the briefing in front of me. Well, let me ask you, are you familiar with the Ninth Circuit case of Winn v. Killian? No. Well, the citation for that case is 307-5-3-1011, Ninth Circuit, 2002, and it seems to say that because the plaintiffs, well, it does say, because plaintiffs attacked the grant of a tax credit, which is not one of the three types of state court procedures barred from challenging federal court by the Tax Injunction Act, the district court erred in dismissing the action pursuant to that act. That seems to be dispositive of that point. Would you agree? Yes. If that language is as I represent it to you? I would agree. Would you? If the court . . . So for those reasons . . . Which is not the position taken in your letter brief. That is correct. All right, so if you get past that, then you're back to Pullman. Yes, then we get back to Pullman. Under the circumstances of the case, what was being raised by you three judges was questions specifically with respect to the Montana issues. Article 10, Section 6 of the Montana Constitution is a very unique and very prohibitive statute for any public funds, for any purpose to go to religious schools. It says directly or indirectly. It doesn't just say appropriations. It says appropriations or payments. So it's very . . . It's probably, and we've represented this before, the Montana Supreme Court, it's the strictest of those articles and sections in the country. And when you ask specifically, Judge Bencivengo . . . Good enough. I apologize. Some other difficulties. When you ask the questions about what does it do to the public fisc, the state legislature, when it passed Senate Bill 410, that is the law that allows for these scholarships, they specifically set aside $3 million per year and then gave a growth rate to it if that $3 million threshold is met. We've been unable to find any other tax credit in Montana that has specifically indicated, okay, we think it's going to cost the state this amount of money. So it does, in fact, take away. It's those types of state issues that we recommend that this court should defer to, the Montana State Supreme Court in this case, so that they can address those issues before any remaining issues might come to the federal court. Should the case have been dismissed? I'm sorry? Should the case have been dismissed? Should this case have been dismissed? In the district court, should the case have been dismissed after a determination that abstention was appropriate? We think the better course probably would have been for a stay of the proceedings. Isn't that the controlling authority? When you say the better course, it's not a trick question. The controlling authority is that, yes. We're willing to say that under most circumstances, a case like this should be stayed and it can wait while the state court proceeds. Counsel, I'm not trying to give you a hard time, but you keep saying things like under most circumstances and the better course would have been, and I'm trying to figure out if you're really telling me you think that there was discretion to do what the trial court did or do you think that was error? I think it was error and the court should have stayed. So you're pro-Pullman, but the case should have been stayed. Is that your bottom line? Yes. Essentially that these plaintiffs, the Armstrongs, may have a right if the state court proceedings don't fully cover all of the issues before it and if there are any remaining issues, then the Armstrongs should have a right to be able to go forward. In this action here? Yes. Yes. Thank you. Yes. Under the Pullman test, the federal courts do defer to the state courts and the Armstrongs' attorney indicated that this is a First Amendment case and the courts are very reticent to abstain in First Amendment cases. But in this very circuit, Almodovar was that exceptional case where it said we think that the state courts might limit what we're going to review later and so we want to allow the state courts to go forward. Secondly, because that case was already before the California Supreme Court at the state level, then this circuit was willing to allow the state case to go ahead without a chilling effect and without any expense and delay. That's precisely what we have here. Obviously, since you know that the Montana Supreme Court has the case before it, they have the federal constitutional claims along with the Montana constitutional claims. Are all the claims that the plaintiff wants to assert in federal court being addressed in that state court action, are they comparable side by side or will they be without some remedy on something? They won't be without some remedy on something. We have briefed all of the equal protection claims, the establishment claims, and the free expression claims. Both sides have. And of course, if there are some claims that remain, the federal court litigation is still available after the state is lifted. Absolutely. And I should add that there are several amicus briefs that have also from organizations around the country on both sides that have briefed the federal claims also. So it's been fully briefed and the state court has its opportunity to review all of those. The only other point is that we think that the Pullman Doctrine is certainly applicable. If this court decides that the case is ripe, then the Pullman Doctrine applies. We've also addressed the Colorado Doctrine. I'd be happy to answer any questions. But generally speaking, that's available if the proceedings are parallel and if there are exceptional circumstances. The only thing I wanted to really address with respect to that is that in their briefing, the Armstrongs have indicated that the courts don't review, don't allow for the Colorado Doctrine abstention if it's a Section 1983 claim. The reference to that was the Tovar case. The Tovar case didn't indicate specifically that we won't ever allow for abstention in 1983 actions. It just said in that particular case that it puts a greater weight on it. Under the circumstances of this case, the exceptions apply. Even though it's a weightier standard, if you want to put it that way, there's parallel proceedings where the state court is looking at it already. The state court case was filed before the federal court case and all of those questions that may be before this court in the future are already before the Montana Supreme Court, so they can fully be answered. I hate to be circular, and maybe it's because I just don't have enough experience with this tax injunction act, but in your responsive brief, you said that that act is intended to prevent, in joining the assessment and collection of taxes where the taxpayer was avoiding paying those taxes, and it should be read to restrain state taxpayers from instituting federal actions to contest their liability for state taxes, which is the way I understand what's going on here. But then you go on to say it doesn't stop third parties from pursuing constitutional challenges to tax benefits. Well, this is a direct party who wants to avoid this tax, who wants this credit. So I don't understand what the point was to that differentiation that you were making. Thank you, Your Honor. The distinction that we were making is the difference between assessment and collection of taxes versus tax benefits, a tax credit, a tax deduction, and the like. You're focusing on the end of the sentence. We are focusing on the end of the sentence. So what about third parties? It seems to me that I joined my colleague. It seems to me the Supreme Court was making a very clear distinction in Hibbs between a third party making this challenge and Armstrongs who are in a first-party situation. But your brief doesn't make that distinction at all. It doesn't. We didn't address that at all. We went to the end of the sentence, as you said, and parsed out the difference between the two. Because that was fundamentally what was going on in Hibbs. In Hibbs, the third party who wasn't trying to avoid the tax but was trying to say you shouldn't be giving this tax credit to other people was challenging it. And the Supreme Court said, yeah, the Tax Injunction Act wouldn't apply there, as opposed to the party who would be benefiting from the tax credit saying I want this tax credit, and therefore I want less revenue to go to the state. And under the circumstances of those cases, I would agree with you that the Tax Injunction Act may actually apply for a first party who wants to benefit from those tax credits and take money from the public fisc. Okay, thank you. The other distinction I think you didn't make in your letter brief, but I want to get your position on it. Hibbs, as I said, the plaintiffs in Hibbs, the Supreme Court found very significant. If they prevailed, the state revenue would actually be increased. Not so here. This is a 180, isn't it? That is a 180. As I've indicated, the Montana State Legislature, when it passed the law, set aside $3 million as if to say we're going to lose this revenue because we anticipate there are going to be several families who want the tax credit to be able to get the scholarship. That's right. And so it just really surprised me that you weren't embracing Hibbs. I thought your letter brief was going to be all about Hibbs, and you seem to be paddling away from it. I think that is true, and that's an interesting point, because we went directly to the hyper-technical aspects of the tax, of what taxes are within the expenditures of state legislature and quite possibly just stepped right by the first part of what the court was looking at in that case. I see. If we were to apply it in that fashion, I think that the Tax Injunction Act may apply. Thank you. All right. Thank you, Counsel Roboto. Thank you, Your Honors. Just briefly, in case it's helpful, the citation to that Colorado Supreme Court Tax Injunction Act, I'm sorry, it's a Supreme Court case about a Colorado tax, just to be clear, is Direct Marketing Association v. Broll. That's 135 Supreme Court 1124. That's a 2015 case, and that's where Colorado imposed sales tax requirements on online purchases, but it was the responsibility of the purchaser to go ahead and submit their purchases and pay that tax themselves. So Colorado, realizing it was losing a lot of money through online purchasers that were not voluntarily submitting those purchases for their tax liability, said we're going to impose a notice requirement on retailers that tells the purchasers, I think, if it was over $100 or something, that they were responsible to still pay taxes on it. But the retailers challenged that, and even though there's no question that a notice requirement was protecting the collection of state revenue. But, Counsel, forgive me for interrupting, but right there, if it's the retailers challenging it, and they're not the ones who are going to be paying the tax, right? It's the consumer. So aren't they a third party? I think they are, Your Honor, but the court didn't base its holding on that. In fact, the court specifically recognized that even though there was a negative impact, quote, a negative impact on states' revenues, because it didn't directly enjoin. It was a directness in attenuation analysis rather than a third party versus first party analysis. I'm just wondering whether the court, is it your view that the court could not have relied on the third party position? Because they seem to be positioned in a way that would be consistent with Gibbs. I think they potentially could have, and I think it's telling that they chose not to. Instead, focused on the specific statutory language with regard to the Tax Injunction Act, interpreting what collection means, what assessment means, and so forth, and said, look, we think only in the case where you're directly enjoining the actual collection or assessment of tax is the Tax Injunction Act relevant. Just briefly, also to address Almodovar, Almodovar v. Reiner was a case cited by the state in which the California Supreme Court was indeed addressing a question at the same time that the case was presented to the Ninth Circuit. But the other factor in Almodovar that influenced the court in deciding that abstention was appropriate there was that there was an uncertain state law question with respect to the meaning of the law being challenged. Here, there's really no dispute over what the Department of Revenue regulation means. And no time has Montana tried to argue that that doesn't mean that religious schools are exempt, and therefore I think Almodovar is still distinguishable for that reason. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court. The final case on calendar, Eagle Marine Services v. McNish, has been submitted on the briefs. That completes our calendar for the day. We are in recess until 9 a.m. tomorrow morning.
judges: Rawlinson, Christen, Bencivengo